UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JAMES E. MANLEY,               )
                                       )
           Petitioner,        )
                                       )
           v.                  )        No. 1:17-cv-04629-WTL-DML
                                       )
SUPERINTENDENT,           )
                                       )
           Respondent.       )

**ENTRY DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

James Manley's petition for a writ of habeas corpus challenges a prison disciplinary proceeding identified as NCF 17-09-0085. For the reasons explained in this Entry, Mr. Manley's habeas petition must be **denied**.

## I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss*, 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson*, 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell*, 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

## II. The Disciplinary Proceeding

Mr. Manley is an inmate at New Castle Correctional Facility (NCCF). As an inmate at NCCF, Mr. Manley has been involved in numerous disciplinary proceedings. This action concerns his conviction for being a "habitual rule violator" in violation of Code B-200 of the Indiana Department of Correction's (IDOC) Adult Disciplinary Process.

On September 22, 2017, NCCF employee A. Petty filed a conduct report stating that he became aware that Mr. Manley had violated Code B-200 while reviewing conduct reports. Dkt. No. 7-1. "He has been found or plead (sic) guilty to five related or unrelated class C conduct offenses in a period of six months or less according to OIS." *Id.* Records from the Offender Information System (OIS) indicate that Mr. Manley was sanctioned in six disciplinary proceedings between August 14 and September 21, 2017, all for violating Code C-356, "refusing an assignment." Dkt. No. 7-2.

On September 26, 2017, Mr. Manley received written notice that he had been charged with violating Code B-200 and that he would have a hearing "within 7 work days." Dkt. No. 7-3. The notice did not specify when in that timeframe the hearing would take place. *Id.* The notice also did not identify what prior disciplinary actions served as the basis for the habitual violator charge. *Id.*

Mr. Manley was found guilty at a hearing on September 28, 2017. Dkt. No. 7-5. The hearing officer's report indicates that he made his decision after reviewing the OIS record of Mr. Manley's disciplinary proceedings, staff reports, and a statement and other documents Mr. Manley presented in his defense. *Id.* The hearing officer recommended sanctions including the loss of 90 days' earned credit time and a demotion in credit-earning class. *Id.* Mr. Manley filed two appeals, and both were denied. Dkt. Nos. 7-13 and 7-14.

## III. Analysis

Mr. Manley challenges his conviction in disciplinary proceeding NCF 17-09-0085 on several grounds, each of which the Court addresses below. First, though, the Court will address two overarching issues that permeate Mr. Manley's other challenges to this conviction.

First, many of Mr. Manley's challenges to his habitual violator conviction are based on attacks on the validity of his previous, underlying convictions for refusing assignments. The Court cannot entertain these arguments.

"[A] habeas corpus petition must attack the fact or duration of one's sentence; if it does not, it does not state a proper basis for relief." *Washington v. Smith*, 564 F.3d 1350, 1350 (7th Cir. 2009). Typically, in the context of prison disciplinary proceedings, this means that in order to be considered "in custody," the petitioner must have been deprived of good-time credits, *Cochran*, 381 F.3d at 639, or of credit-earning class, *Montgomery*, 262 F.3d at 644-45. When such a sanction is not imposed, the prison officials are "free to use any procedures it chooses, or no procedures at all." *Montgomery*, 262 F.3d at 644. A disciplinary conviction does not open the door to a federal challenge to an earlier, underlying disciplinary conviction that did not itself implicate the prisoner's custody. *See Wilson-El v. Finnan*, 544 F.3d 762, 765–66 (7th Cir. 2008) ("The concern the Court expressed for finality, and its willingness to give that concern priority even in the face of earlier convictions that may have been tainted by the Sixth Amendment violation of ineffective assistance of counsel, suggest to us that the Court would frown on any holding that opened the door in the present situation to collateral attacks on underlying disciplinary convictions.").

Mr. Manley's previous convictions for refusing assignments did not result in a credit time deprivation or credit class demotion. *See* Dkt. Nos. 7-15–7-20. He therefore cannot challenge those

convictions in this habeas action, even as a vehicle for challenging his conviction in NCF 17-09-0085.

Second, Mr. Manley's petition asserts that he is entitled to habeas relief because he was deprived of certain due process protections secured by Indiana law and IDOC policy. The Court cannot entertain these arguments either. It is well-settled that a prison official's breach of state law or policy is no basis for habeas relief. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 68 n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas review."); *Robinson v. Martin*, 252 F. App'x 94, 95 (7th Cir. 2007) ("§ 2254 cannot be used to enforce state law"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("[A] prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review.").

Mr. Manley's arguments attacking his underlying disciplinary convictions and asserting violations of state law or policy are summarily rejected. The Court now proceeds to Mr. Manley's constitutional challenges to his habitual violator conviction.

## A.    Sufficiency of Notice

Due process requires that an inmate be given advanced "written notice of the charges . . . in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." *Wolff*, 418 U.S. at 564. "The notice should inform the inmate of the rule allegedly violated and summarize the facts underlying the charge." *Northern v. Hanks*, 326 F.3d 909, 910 (7th Cir. 2003) (citations and quotation marks omitted). This notice must be issued at least 24 hours before the hearing. *See Wolff*, 418 U.S. at 564 ("At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance . . . .").

Mr. Manley argues that the notice he received of the screening was deficient in two respects. First, Mr. Manley asserts that his notice was deficient because it did not specify the date

4

and time his hearing would be held. In other words, Mr. Manley contends that the Constitution's due process protections entitle him to be notified at least 24 hours before his hearing not only of the basis for his charge and that he will be subjected to a hearing, but also of the date and time at which the hearing will be held. The Court is not aware of any authority supporting this proposition, and Mr. Manley has not presented any. And there is no dispute that Mr. Manley received notice of his charges more than 24 hours before his hearing commenced.

Second, Mr. Manley asserts that his notice did not include sufficient information to allow him to prepare a defense. Specifically, he criticizes the notice because it mistakenly represents that Code B-200 punishes the commission of five *related or unrelated* offenses in a six-month period, whereas the policy actually punishes the commission of five *unrelated* offenses. More significantly, he complains that he was not provided with any statement before the hearing of the underlying convictions serving as the basis for his charge.

In this respect, the notice provided to Mr. Manley is troubling. It is difficult to imagine how Mr. Manley could have marshaled the facts or prepared a defense to his charge without knowing what policies he was thought to have violated or when he was thought to have violated them. *See Wolff*, 418 U.S. at 564; *see also, e.g.*, *Vermillion v. Levenhagen*, 519 F. App'x 944, 946 (7th Cir. 2013) ("When known, and absent security or confidentiality needs, due process requires that prison officials notify the prisoner of the 'date, place, and nature of the alleged misconduct.'") (quoting *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007)).

Nevertheless, this defect does not entitle Mr. Manley to relief. Harmless error analysis applies to due process violations in prison disciplinary proceedings. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011); *Piggie*, 344 F.3d at 678. Any error in this case was harmless given the unique context of a habitual violator charge, which is essentially a matter of record. Mr. Manley's

only defense would have been to show that he was not convicted of five or more unrelated Class C offenses in a six-month period. Records clearly show that he was convicted of five or more separate offenses in that period. Therefore, had Mr. Manley been provided with an accurate record of his prior convictions and an accurate copy of Code B-200, they would not have meaningfully assisted him in defending his habitual violator charge.

**B.      Denial of Evidence**

Mr. Manley asserts that he was denied an opportunity to present video evidence that would have shown that one of his underlying convictions was wrongful. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones*, 637 F.3d at 847. Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780–81 (7th Cir. 2008).

The evidence Mr. Manley has described was neither material nor exculpatory. Therefore, even assuming he was denied that evidence, the denial did not deny him of due process. The video Mr. Manley describes would not show that he was not convicted of any prior offense; it would only call into question the propriety of that conviction. As previously discussed, the propriety of a prior conviction that did not result in a credit time deprivation or a credit class demotion is not a subject within the scope of this habeas action. Moreover, the Court is not aware of any legal standard that would have obligated the hearing officer to permit an attack on the propriety of a prior conviction in hearing disciplinary case NCF 17-09-0085.

**C.      Partiality of Decisionmaker**

Mr. Manley next asserts that the officer who presided over his hearing was not impartial. A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker.

*Hill*, 472 U.S. at 454. Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666; *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the prison. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Manley has not presented clear evidence raising any reason to doubt the hearing officer's impartiality in this case. There is no evidence that the hearing officer was involved in any of his underlying disciplinary cases except as a hearing officer, *see* Dkt. Nos. 7-15–7-20, and *Piggie* makes clear that this does not undo the presumption of impartiality. Mr. Manley alleges that the hearing officer must have printed his OIS report on the date of the hearing. *See* Dkt. No. 8 at 12. There is no evidence confirming this allegation. Even assuming it is true, though, he has not presented any precedent to support an argument that simply printing a record from a computer system renders a hearing officer "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *See Piggie*, 342 F.3d at 667. Finally, Mr. Manley accuses the hearing officer of making a false statement against him in a declaration filed in a previous habeas action in this Court. However, the Court has reviewed the declaration in question, and it is not clear that any portion of it is false. *See* case no. 1:16-cv-03292-TWP-DLP, Dkt. No. 10-15.

**D. Insufficiency of Evidence**

Mr. Manley argues that there was not sufficient evidence to support his conviction. Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. The conduct report "alone" can "provide[] 'some evidence' for the . . . decision." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999).

In short, Mr. Manley argues that the hearing officer's decision was not supported by sufficient evidence that his prior disciplinary convictions were "unrelated" as required by Code B-200. The disciplinary code does not define "unrelated." Mr. Manley urges the Court to apply the definition used in Ind. Code § 35-50-2-8(f), which allows criminal defendants to be sentenced as habitual offenders in certain situations, but there is no indication that this definition has ever been applied to prison disciplinary proceedings.

The documentation before the hearing officer included an OIS record showing six separate entries between August 14 and September 21, 2018, of hearings held and sanctions entered for refusing assignments. Dkt. No. 7-2. This report alone constitutes "some evidence" that could

support the hearing officer's conclusion that Mr. Manley was convicted of at least five unrelated offenses in that period.

**E.    Meaningful Review on Appeal**

Finally, Mr. Manley argues that the officials who denied his appeals did not engage in a meaningful review of his case. But there is no due process right to an administrative appeal, so no error during the administrative appeal process can form a basis for habeas relief. The Supreme Court in *Wolff* made clear that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." 418 U.S. at 556. The due process rights that apply, which are set forth in detail in *Wolff*, do not include a right to appeal and certainly do not include any safeguards during an administrative appeal. Moreover, the procedural guarantees set forth in *Wolff* may not be expanded by the lower courts. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001).

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Manley to the relief he seeks. Accordingly, Mr. Manley's petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this entry shall now issue.

**IT IS SO ORDERED.**

Date: 9/7/18

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

JAMES E. MANLEY
900778
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov